UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SISKIYOU COUNTY,<br><br>  Plaintiff,<br><br>  v.<br><br>PACIFICORP,<br><br>  Defendant. | No. 2:22-cv-1582 DAD DB<br><br>ORDER |

Pending before the court is defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF No. 9.) On October 17, 2023, the assigned District Judge referred the motion to the undersigned for issuance of findings and recommendations. (ECF No. 28.) For the reasons stated below, the undersigned recommends that defendant's motion be denied.

**BACKGROUND**

Plaintiff Siskiyou County ("County") commenced this action on August 10, 2022, by filing a complaint in the Sacramento County Superior Court. (ECF No. 1-1 at 2.[1]) The complaint alleges that defendant Pacificorp is an Oregon corporation doing business as a public utility in Northern California. (Id. at 6.) Pacificorp generates, transmits, and distributes electricity to

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1

approximately 45,000 customers in Siskiyou, Shasta, Del Norte, and Modoc Counties in California.  (Id.)

During the relevant period defendant was aware that California "had been in a multi-year drought" and "that portions of Siskiyou County frequently experience high wind conditions, which are highly conducive to the rapid spread of wildfires and extreme fire behavior."  (Id. at 9.)  In 2019, defendant released their "California Wildfire Mitigation Plan" which "recognized that good vegetation policies and active deenergization policies were key to preventing their equipment starting wildfires."  (Id.)  Defendant also acknowledged the importance of trimming trees "to make sure they did not crash into their powerlines during high winds" and to make sure that "trees near the powerlines were sufficiently sturdy[.]"  (Id.)  Defendant released a similar plain on February 4, 2020.  (Id. at 11.)

On September 4, 2020, the National Weather Service "issued a 'fire weather watch'" warning for September 7, explaining that "'critical fire weather conditions are forecast to occur.'"  (Id. at 11.)  On September 5, 2020, it issued a "Red Flag Warning" for September 7, 2020, explaining that "'warm temperatures, very low humidity, and strong winds" were "expected to produce an increased risk of fire danger.'"  (Id. at 11-12.)

While other "owners and operators of power lines in Oregon and California deenergized their power lines when the winds hit on September 7th because of the fire danger," defendant did not.  (Id. at 12.)  Defendant left their power lines energized during these conditions even though "[i]n April of 2021, the Federal Energy Regulatory Commission issued an order to show cause" to defendant as to why defendant should not be fined $42 million "for their near decade-long failure" to use a proper facility rating for their lines.[2]  (Id. at 13.)

On September 8, 2020, near the Slater Butte Fire Lookout in the Klamath National Forest, a "hazardous white fir tree that was weakened by decay, rot and disease" feel into defendant's power lines, igniting the Slater Fire.  (Id. at 3.)  The Slater Fire "burned approximately 158,000

---

[2] Facility Rating "establishes how much power can safety flow across a line."  (Compl. (ECF No. 1-1) at 13.)  Using an incorrect rating causes "sagging" in power lines, "which can cause fires."  (Id.)

1   acres," damaged or destroyed over 700 structures, and resulted in multiple injuries and fatalities.
2   (Id.)  The Slater Fire was caused by defendant's "negligent and improper vegetation
3   management" and "improper . . . maintenance, repair, operation, and ownership of the electrical
4   distribution system[.]"  (Id. at 4.)
5        Pursuant to these allegations the complaint asserts causes of action for inverse
6   condemnation, negligence, nuisance, premises liability, trespass, violation of California Public
7   Utilities Code § 2106, and violation of California Health & Safety Code § 13007.  (Id. at 16-31.)
8   On September 8, 2022, defendant removed the matter to this court pursuant to 28 U.S.C. §§ 1332
9   and 1441.  (ECF No. 1 at 2.)  That same day defendant filed an answer.  (ECF No. 1-4.)
10       On October 28, 2022, defendant filed a motion for judgment on the pleadings pursuant to
11  Rule 12(c) of the Federal Rules of Civil Procedure as to plaintiff's inverse condemnation claim.
12  (ECF No. 9 at 2.)  Plaintiff filed an opposition on November 11, 2022.  (ECF No. 11.)  Defendant
13  filed a reply on November 21, 2022.  (ECF No. 12.)  On October 17, 2023, the assigned District
14  Judge referred the motion to the undersigned for issuance of findings and recommendations.
15  (ECF No. 28.)  On January 24, 2024, plaintiff filed a request for judicial notice of three California
16  superior court cases in support of plaintiff's opposition.[3]  (ECF No. 33.)

**STANDARDS**

**I.     Legal Standards Applicable to Motion For Judgment on The Pleadings Pursuant to Rule 12(c)**

Rule 12(c) of the Federal Rules of Civil Procedure provides that: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's

---

[3] The court may take judicial notice of its own files and of documents filed in other courts. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice of documents related to a settlement in another case that bore on whether the plaintiff was still able to assert its claims in the pending case); Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar and related claims); Hott v. City of San Jose, 92 F.Supp.2d 996, 998 (N.D. Cal. 2000) (taking judicial notice of relevant memoranda and orders filed in state court cases).

3

1   pleadings[.]" Morgan v. County of Yolo, 436 F. Supp. 2d 1152, 1154-55 (E.D. Cal. 2006), aff'd,
2   277 F. App'x 734 (9th Cir. 2008).

3       In reviewing a motion brought under Rule 12(c), the court "must accept all factual
4   allegations in the complaint as true and construe them in the light most favorable to the
5   nonmoving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). A Rule 12(c) motion
6   should be granted ""when, taking all the allegations in the non-moving party's pleadings as true,
7   the moving party is entitled to judgment as a matter of law.'" Marshall Naify Revocable Trust v.
8   United States, 672 F.3d 620, 623 (9th Cir. 2012) (quoting Fajardo v. County of Los Angeles, 179
9   F.3d 698, 699 (9th Cir. 1999)).

10       "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is
11   the time of filing. Because the motions are functionally identical, the same standard of review
12   applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." Dworkin v. Hustler
13   Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). The purpose of a motion to dismiss
14   pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz.
15   Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a
16   cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."
17   Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to
18   allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v.
19   Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads
20   factual content that allows the court to draw the reasonable inference that the defendant is liable
21   for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

22       In determining whether a complaint states a claim on which relief may be granted, the
23   court accepts as true the allegations in the complaint and construes the allegations in the light
24   most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.
25   United States, 915 F.2d 1242, 1245 (9th Cir. 1989). The court need not assume the truth of legal
26   conclusions cast in the form of factual allegations. United States ex rel. Chunie v. Ringrose, 788
27   F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations,
28   "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal,

556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

## ANALYSIS

### I.     Defendant's Motion

"An inverse condemnation action . . . is an eminent domain action initiated by one whose property was taken or damaged for public use." Pacific Bell v. City of San Diego, 81 Cal.App.4th 596, 601 (2000).  "The fundamental policy underlying the concept of inverse condemnation is to spread among the benefiting community any burden disproportionately borne by a member of that community, to establish a public undertaking for the benefit of all." Barham v. Southern Cal. Edison Co., 74 Cal.App.4th 744, 752 (1999).

"A public entity 'takes or damages' private property when it causes physical damage to that property without physically invading it." San Diego Gas & Electric Co. v. Superior Court, 13 Cal.4th 893, 940 (Cal. 1996).  "A public use is a use which concerns the whole community as distinguished from a particular individual or a particular number of individuals; public usefulness, utility or advantage; or what is productive of general benefit; a use by or for the government, the general public or some portion of it." Customer Co. v. City of Sacramento, 10 Cal.4th 368, 381 (Cal. 1995) (quotation omitted).

Defendant first argues that the County has failed to state an inverse condemnation claim because the "California Supreme Court has . . . never ruled that inverse condemnation liability applies to privately owned electrical utilities like Pacificorp." (Def.'s MJOP (ECF No. 9) at 14.) It appears true that the California Supreme Court has not expressly ruled that a privately owned utility may be liable for inverse condemnation.  But See Gay Law Students Assn. v. Pacific Tel.

////

1  & Tel. Co., 24 Cal.3d 458, 469 (Cal. 1979) ("In California a public utility is in many respects

2  more akin to a governmental entity than to a purely private employer.").

3  However, "[s]ince at least 1894, Californian courts have not limited the application of

4  inverse condemnation to public entities." In re PG & E Corporation, 611 B.R. 110, 113 (Bkrtcy.

5  N.D. Cal. 2019); see also Eachus v. Los Angeles Consolidated Elec. Ry. Co., 103 Cal. 614, 622

6  (Cal. 1894) (holding plaintiff could recover on inverse condemnation claim against privately-

7  owned railroad company); Butte Fire Cases, No. JCCP4853, 2017 WL 9832289, at *6 (Sup. Ct.

8  Sacramento County June 22, 2017) ("under California law the proposition a privately-owned

9  public utility such as PG&E may be held liable for inverse condemnation is now solidly

10  established").[4]

11  In Barham v. Southern Cal. Edison Co., 74 Cal.App.4th 744 (1999), the defendant,

12  Southern California Edison Company, was alleged to be responsible for damages sustained as a

13  result of the Mill Creek Fire, allegedly caused by the failure of the defendant's power lines. (Id.

14  at 747.) The California Court of Appeal found the defendant could be liable for inverse

15  condemnation. (Id. at 747-48.) In reaching this holding the court rejected the defendant's request

16  "to differentiate between damage resulting from the operation of a utility based solely upon

17  whether the utility is operated by a governmental entity or by a privately owned public utility."

18  (Id. at 753.)

19  In Pacific Bell Telephone Co. v. Southern California Edison Co., 208 Cal.App.4th 1400

20  (2012), the California Court of Appeal again found that a private electrical company may be

21  liable under inverse condemnation for the damage to another's property. Id. at 1404. In reaching

22  this decision the court stated: "We do not believe the happenstance of which type of utility

23  operates in an area should foreclose a property owner's right to just compensation under inverse

24  condemnation for the damage, interest and attorney fees and should limit the property owner to

25  traditional tort remedies." Id. at 1408.

26  ////

27

28  [4] The cases for which plaintiff has sought judicial notice are also consistent with the above.

Defendant argues these decisions "relied on incorrect assumptions that the utility could spread losses and are thus outdated and distinguishable." (Def.'s MJOP (ECF No. 9) at 15.) In support of this argument defendant relies on the November 30, 2017, decision of the California Public Utilities Commission ("CPUC") denying San Diego Gas & Electric Company's application for a rate increase. (Id. at 10, 15.) Defendant asserts that the CPUC "unequivocally stated that '[i]nverse condemnation principles are not relevant" to the CPUCU's review. (Id. at 10.)

Although defendant has submitted a copy of the CPUC's November 30, 2017 decision, and is 73 pages long. And defendant does not provide a pinpoint citation for the quote above. However, the quote appears to come from page 65 of the decision. It is far from clear to the undersigned that the CPUC's statement was unequivocal. In this regard, the full quote reads:

> First, Inverse Condemnation principles are not relevant to a Commission reasonableness review under the prudent manager standard. Thus, Inverse Condemnation was not a material issue in Phase 1 and did not merit a dedicated discussion. Notably, even SDG&E withdrew its testimony concerning Inverse Condemnation for purposes of Phase 1.
>
> Second, according to SDG&E's application, the Superior Court only went so far as to rule that the plaintiff homeowners could plead Inverse Condemnation claims in their civil actions against SDG&E. We are not aware of any Superior Court determination that SDG&E was in fact strictly liable for the costs requested in its application. Even if SDG&E were strictly liable, we see nothing in the cited case law that would supersede this Commission's exclusive jurisdiction over cost recovery/cost allocation issues involving Commission regulated utilities.

(Def.'s Ex. B (ECF No. 9-3) at 68.)

Moreover, defendant's argument is inviting the court to speculate that California courts would rule differently in light of the CPUC's 2017 decision. However, as noted above, this action is before this court based on diversity jurisdiction. (ECF No. 1 at 2.) "In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court" and "[i]f the state's highest court has not decided an issue, it is the responsibility of the federal courts sitting in diversity to predict how the state high court would resolve it." Albano v. Shea Homes Ltd. Partnership, 634 F.3d 524, 530 (9th Cir. 2011). "An intermediate state

7

appellate court decision is a 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" Estrella v. Brandt, 682 F.2d 814, 817 (9th Cir. 1982) (quoting West v. A. T. & T. Co., 311 U.S. 223, 237 (1940)).  Here, the undersigned cannot find the CPUC's 2017 decision relied on by defendant is sufficiently persuasive to be convinced that the California Supreme Court would decide otherwise.[5]

Defendant next argues that the County "cannot allege substantial causation" as articulated by the California Supreme Court in City of Oroville v. Superior Court of Butte County, 7 Cal. 5th 1091 (Cal. 2019).  In that case a dental practice suffered damages when raw sewage spewed into the building.  (Id. at 1097.)  The dental practice alleged that the City of Oroville ("City") was liable for inverse condemnation by allowing sewage to back up into the building.  (Id. at 1098.)

The California of Appeal affirmed the trial court's decision that held the City liable for inverse condemnation.  (Id.)  The California Supreme Court reversed, finding that the appellate court failed to address "whether the inherent risks associated with the sewer system — as deliberately, designed, constructed, or maintained — were the substantial cause of the damage to private property."  (Id.)  Defendant argues that plaintiff here has failed to allege "facts establishing substantial causation" and offers only "conclusory allegations that any alleged damage was the inescapable or unavoidable consequence of any of PacifiCorp' actions."  (Def.'s MJOP (ECF No. 9) at 18.)

In City of Oroville, the City moved for summary judgment based in part on evidence establishing that the dental practice "failed to install a legally-required backwater valve that would have prevented sewage from entering their building in the event of a sewer main backup." (Id. at 1098.)  The trial court denied the City's motion and later judicially determined the City was liable for inverse condemnation "even though the City shared causal responsibility for the damage[.]"  (Id. at 1100.)  In reversing the order of the Court of Appeal, the California Supreme

---

[5] The undersigned notes that the California Court of Appeal in Pacific Bell seems to have expressly rejected defendant's argument, stating that even if a municipal utility "were no longer able to spread the cost of public improvements" that would not "immunize municipal utilities from inverse condemnation liability[.]"  Pacific Bell, 208 Cal.App.4th at 1407, fn.6.

1  Court noted that dental practice failed to give "any rationale to doubt that the City made
2  reasonable assumptions in reaching its decision for the design, construction, or maintenance of
3  the sewer system" and that the "record" supported "that the City acted reasonably in adopting the
4  design for the sewer system, and that the sewer was designed in accordance with the accepted
5  practices for designing and constructing sewer systems of that time." (Id. at 1110.)

6  Here, defendant's motion is not one for summary judgment based on evidence or a
7  judicial determination of liability. See generally Hal Roach Studios, Inc. v. Richard Feiner and
8  Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989) ("judgment on the pleadings is improper when the
9  district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be
10 treated as a motion for summary judgment").

11 Instead, defendant's Rule 12(c) motion requires the court to "accept all factual allegations
12 in the complaint as true and construe them in the light most favorable to the" County. Fleming,
13 581 at 925. The complaint alleges that the defendant knew its electrical distribution system was
14 vulnerable to known and foreseeable weather and environmental conditions. (Compl. (ECF No.
15 1-1) at 5.) That the defendant's own California Wildfire Mitigation Plan acknowledged that
16 "good vegetation policies and active deenergization polices were key to preventing their
17 equipment from starting wildfires." (Id. at 9, 11.)

18 That defendant "knew that there was an extreme fire risk" but still "left their power lines
19 energized" despise warnings of "elevated risk" and the fact that other operators "deenergized their
20 power lines" when presented with these warnings. (Id. at 12.) That defendant did so despite
21 using "incorrect ratings throughout its network" which "permitted power to flow on its lines that
22 would cause sagging in its lines, which can cause fires." (Id. at 13.) And that "prudent inspection
23 of trees in the area . . . would have revealed the rot and hazardous nature of the Subject Tree[.]"
24 (Id. at 5.)

25 As explained by the court in City of Oroville, "inverse condemnation liability depends on
26 whether the property damage was the probable result or necessary effect of an inherent risk
27 associated with the design, construction, or maintenance of the relevant public improvement." 7
28 Cal.5th at 1111. Defendant argues that wildfire damages is not an inherent risk of its equipment.

1  (Def.'s MJOP (ECF No. 9) at 20.)  However, "the 'inherent risk' aspect of the inverse
2  condemnation inquiry is not limited to deliberate design or construction of the public
3  improvement.  It also encompasses risks from the maintenance or continued upkeep of the public
4  work."  City of Oroville, 7 Cal.5th at 1107.  Where an "entity makes a policy choice to benefit
5  from the cost savings from declining to pursue a reasonable maintenance program . . . inverse
6  condemnation principles command 'the corollary obligation to pay for the damages caused when
7  the risks attending these cost-saving measures materialize.'"  Id. at 1107 (quoting Pacific Bell, 81
8  Cal.App.4th at 608).  This is what the complaint is alleging here.
9        Finally, defendant argues that accidental wildfire damage does not serve a public use
10  (Def.'s MJOP (ECF No. 9) at 23.)  Defendant asserts that in Miller v. City of Palo Alto, 208 Cal.
11  74, 77 (Cal. 1929), the California Supreme Court "held that there was 'no merit' to plaintiff's
12  inverse condemnation claim" because "the plaintiff failed to plead a 'public use" even though the
13  defendant's "disposal of garbage' served 'governmental functions.'"  (Def.'s MJOP (ECF No. 9)
14  at 24) (quoting Miller, 208 Cal. at 77.)
15        In Miller, the plaintiffs were owners of real property.  208 Cal. at 75.  Defendant City of
16  Palo Alto deposited an incinerator a quarter mile from the property.  Id.  There were materials
17  burning in the incinerator which ignited a fire that spread to the plaintiffs' property resulting in
18  damage.  (Id.)  In Miller, however, the plaintiffs were alleging the defendant's actions were the
19  result of simple negligence.  208 Cal. at 76.
20        At issue here is a claim of inverse condemnation which requires that the damage be
21  "substantially caused by an inherent risk presented by the deliberate design, construction, or
22  maintenance of the public improvement."  City of Oroville, 7 Cal. 5th at 1105.  Public
23  improvements span activities including "underground excavation projects, to street construction,
24  to the distinctive realm of flood control improvements[.]"  Id. at 1103; see also Barham, 74
25  Cal.App.4th at 752 ("condemning private property for the transmission of electrical power is a
26  public use and inverse condemnation will apply").  If a plaintiff's property is damaged as a result
27  of the defendant's design, construction, or maintenance of a public improvement then the plaintiff
28  ////

is entitled to compensation for the damage "whether it was intentional or the result of negligence by the public entity." City of Oroville, 7 Cal. 5th at 1106.

## CONCLUSION

For the reasons stated above, taking all the allegations in plaintiff's complaint as true, the undersigned cannot find that defendant is entitled to judgment as a matter of law.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's October 28, 2022, motion for judgment on the pleadings (ECF No. 9) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 5, 2024

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB/orders/orders.civil/siskiyou1582.12(c).mot.f&rs