HUESTON HENNIGAN LLP
Douglas J. Dixon, State Bar No. 275389
ddixon@hueston.com
Alison L. Plessman, State Bar No. 250631
aplessman@hueston.com
Craig A. Fligor, State Bar No. 323174
cfligor@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

Attorneys for Defendant PacifiCorp

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SISKIYOU COUNTY, a political subdivision of the State of California, duly organized and existing by virtue of the laws of the State of California,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFICORP, and DOES 1 through 50,<br><br>Defendants. | Case No.  2:22-cv-01582-DAD-DB<br><br>**DEFENDANT PACIFICORP'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS**<br><br>Judge: Hon. Dale A. Drozd |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................................4

II. LEGAL STANDARD .........................................................................................................5

III. PACIFICORP IS NOT A PUBLIC ENTITY .....................................................................5

    A. PacifiCorp Cannot Socialize Inverse Condemnation Losses as a Matter of Right ..................................................................................................6

    B. Judge Barnes Relied On Barham and Pacific Bell, Which Wrongly Assumed that Private Utilities Have a Right to Socialize Losses ....................7

    C. Judge Barnes Ignores the Text of the California Constitution .....................8

IV. COUNTY'S ALLEGATIONS DO NOT MEET THE CITY OF OROVILLE SUBSTANTIAL CAUSATION STANDARD .....................................................................9

V. COUNTY'S ALLEGATIONS DO NOT MEET THE CITY OF OROVILLE "INHERENT RISK" STANDARD ......................................................................................9

VI. THE DAMAGE TO COUNTY'S PROPERTY IS NOT SUFFICIENTLY CONNECTED TO A PUBLIC USE ..................................................................................10

VII. CONCLUSION..................................................................................................................11

**Cases**

*Albano v. Shea Homes Ltd. Partnership*,
  634 F.3d 524 (9th Cir. 2011) ............................................................................................... 8

*Albers v. Los Angeles Cnty.*,
  62 Cal. 2d 250 (1965) ......................................................................................................... 9

*Bacich v. Bd. of Control of California*,
  23 Cal. 2d 343 (1943) ......................................................................................................... 9

*Barham v. Southern California Edison Co.*,
  74 Cal. App. 4th 744 (1999) ....................................................................................... 4, 6, 7

*Bauer v. Ventura Cnty.*,
  45 Cal. 2d 276 (1955) ......................................................................................................... 6

*Bunch v. Coachella Valley Water Dist.*,
  15 Cal. 4th 432 (1997) ........................................................................................................ 6

*Cantu v. Pac. Gas & Elec. Co.*,
  189 Cal. App. 3d 160 (Cal. Ct. App. 1987) ........................................................................ 7

*City of Austin v. Liberty Mut. Ins.*,
  431 S.W.3d 817 (Tex. App. 2014) ...................................................................................... 9

*City of Oroville v. Superior Ct.*,
  7 Cal. 5th 1091 (2019) ................................................................................................ passim

*Customer Co. v. City of Sacramento*,
  10 Cal. 4th 368 (1995) .......................................................................................... 5, 10, 11

*Holtz v. Superior Court*,
  3 Cal.3d 296 (1970) ............................................................................................................ 6

*House v. Los Angeles Cnty. Flood Control Dist.*,
  25 Cal. 2d 384 (1994) ................................................................................................. 10, 11

*Miller v. City of Palo Alto*,
  208 Cal. 74 (Cal. 1929) ..................................................................................................... 11

*Pacific Bell Telephone Co. v. Southern California Edison Co.*,
  208 Cal. App. 4th 1400 (2012) .................................................................................. 4, 6, 7, 8

**Statutes and Other Authority**

28 U.S.C. § 636(b)(1)(C) .......................................................................................................... 5

Cal. Const., Art. I, § 19 ............................................................................................... 4, 5, 8, 10

Cal. Pub. Util. Code § 454(a) ................................................................................................... 7

- 3 -
DEFENDANT PACIFICORP'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS
6600064

**I.     INTRODUCTION**

Defendant PacifiCorp respectfully objects to Magistrate Judge Barnes's Findings and Recommendations (ECF No. 34, "F&R") that the Court deny PacifiCorp's Motion for Judgment on the Pleadings (ECF No. 9, "Motion"). The Court should not adopt Judge Barnes's recommendations because her ruling would turn California's inverse condemnation doctrine on its head.  Inverse condemnation applies when the government takes "private property" for a "public use." *See* Cal. Const., Art. I, § 19.  But here, a *public* entity (Siskiyou County) pursues an inverse condemnation claim against a *private* entity (PacifiCorp) for damage to *public* property.  The Court should reject Siskiyou County's attempt to apply California's inverse condemnation doctrine in contravention of the principles set forth in *City of Oroville v. Superior Ct.*, 7 Cal. 5th 1091, 1105–09 (2019).

*First*, PacifiCorp is not a "public entity" because it is not protected by sovereign immunity and cannot socialize inverse condemnation losses as a matter of right. *See id.* at 1102.  The California Supreme Court has never held a private utility may be subject to inverse condemnation liability, and the two California Court of Appeal decisions that reached this conclusion—*Barham v. Southern California Edison Co.*, 74 Cal. App. 4th 744 (1999), and *Pacific Bell Telephone Co. v. Southern California Edison Co.,* 208 Cal. App. 4th 1400 (2012)—were based on a faulty assumption that private utilities can spread losses to customers by raising rates.  This assumption has been proven false by a 2017 California Public Utilities Commission ("CPUC") decision denying San Diego Gas & Electric's ("SDG&E") requested rate increase to spread inverse condemnation settlement losses. Judge Barnes's reliance on *Barham* and *Pacific Bell* after the 2017 CPUC decision is not justified, particularly because those decisions conflict with the plain text of the California Constitution's Takings Clause.

*Second*, County has not alleged that PacifiCorp "substantially caused" damage to its property.  To plead substantial causation, County must allege the damage was an "inescapable or unavoidable consequence" of an inherent risk of PacifiCorp's equipment. *City of Oroville*, 7 Cal. 5th at 1108.  Judge Barnes relies only on allegations that PacifiCorp knew of an "elevated risk" from the weather conditions and various inadequate operational decisions. (F&R at 9–10.)  But the

mere presence of a "risk" does not rise to the level of an "inescapable or unavoidable consequence."

*Third*, County has not alleged that its damage was substantially caused by an "inherent risk[] posed by the public improvement as *deliberately* designed, constructed, or maintained." *Id.* at 1106 (emphasis added).  Here, too, Judge Barnes relies on allegations that PacifiCorp knew of the elevated fire risk and inadequately operated its system.  (F&R at 9–10.)  But County has not alleged that PacifiCorp's purported operational failures represented an "inherent risk" flowing from a "policy choice or plan." *City of Oroville*, 7 Cal. 5th at 1107.

*Finally*, County failed to allege that the damage caused by the Slater Fire served a "public use." Cal. Const., Art. I, § 19.  County merely alleged that PacifiCorp's "Electrical System" serves the "purpose of providing electricity to the public." (ECF No. 1, Compl. ¶ 71.) In rejecting PacifiCorp's argument, Judge Barnes does not cite or discuss *Customer Co. v. City of Sacramento*, 10 Cal. 4th 368, 382 (1995), which requires the plaintiff to allege that the "destruction or damaging of property" *itself* is "sufficiently connected with 'public use.'"

As explained below, the Court should decline to adopt Judge Barnes's recommendations and instead grant PacifiCorp's Motion for Judgment on the Pleadings.

## II.   LEGAL STANDARD

PacifiCorp may serve and file written objections within 14 days of service of Judge Barnes's F&R, and the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by" Judge Barnes. *Id.*

## III.   PACIFICORP IS NOT A PUBLIC ENTITY.

Judge Barnes acknowledges that the California Supreme Court has never "ruled that a privately owned utility may be liable for inverse condemnation." (F&R at 5.)  Yet, Judge Barnes erroneously predicts that the California Supreme Court would allow an inverse condemnation claim to proceed against PacifiCorp. *First*, Judge Barnes ignores California Supreme Court precedent that the underlying purpose of the inverse condemnation doctrine is socialize losses among the public.

Because private utilities cannot socialize losses as a matter of right, they should not be treated as a public entity subject to inverse condemnation liability. *Second*, Judge Barnes incorrectly relied upon two California Court of Appeal decisions that wrongly assumed a private utility could socialize inverse condemnation losses: *Barham v. Southern California Edison Co.*, 74 Cal. App. 4th 744 (1999), and *Pacific Bell Telephone Co. v. Southern California Edison Co.,* 208 Cal. App. 4th 1400 (2012). *Third*, Judge Barnes ignores the text of the California Constitution which provides recovery by *private* entities against *public* entities, not a *public* entity against a *private* entity. The Court should decline to adopt Judge Barnes's recommendations.

### A. PacifiCorp Cannot Socialize Inverse Condemnation Losses as a Matter of Right.

Under the California Constitution's Takings Clause, a "public entity must pay the owner just compensation when it takes or damages private property for public use." *City of Oroville*, 7 Cal. 5th at 1102 (citing Cal. Const. Art. I, § 19).  Inverse condemnation exists to provide private property owners a remedy they "would not otherwise have against the state" because of sovereign immunity. *Bauer v. Ventura Cnty.*, 45 Cal. 2d 276, 282 (1955).  Inverse condemnation also socializes losses by taking losses "inflicted upon [an] individual" and "distribut[ing] [them] throughout the community." *Bunch v. Coachella Valley Water Dist*., 15 Cal. 4th 432, 440 (1997) (quoting *Holtz v. Superior Court* 3 Cal.3d 296, 303 (1970)); *see also City of Oroville v. Superior Ct*., 7 Cal. 5th 1091, 1103, (2019) (same).  Given the history and the purpose of the Takings Clause, the California Supreme Court would likely not subject PacifiCorp to inverse condemnation liability.

Unlike government entities, private utilities such as PacifiCorp are not protected by sovereign immunity and cannot socialize losses. The 2017 CPUC decision confirms the latter point; there, the CPUC rejected SDG&E's attempt to raise its rates to spread inverse condemnation settlement losses. (*See* ECF No. 9-1, Declaration of Douglas J. Dixon in Support of Motion for Judgment on the Pleadings, Ex. B.)  Notably, in response to SDG&E's argument that it should be permitted to raise rates to socialize losses it incurred due to inverse condemnation liability, the CPUC stated "[i]nverse [c]ondemnation principles are not relevant" to the CPUC's review and that

the CPUC has "exclusive jurisdiction over cost recovery/cost allocation issues involving Commission regulated utilities." (Ex. B at 65.)

Judge Barnes downplays the importance of the 2017 CPUC decision against SDG&E, stating only that it is "far from clear . . . that the CPUC's statement was unequivocal." (F&R at 7.) PacifiCorp respectfully disagrees. The CPUC's decision is clear: it will not consider inverse condemnation principles when ruling on a rate increase, and in denying SDG&E's requested rate increase, the CPUC confirmed that utilities may not socialize losses as a matter of right. (Ex. B at 65.) Without the ability to socialize losses through rate increases, there is no Constitutional basis to subject private utilities to inverse condemnation liability.

**B.     Judge Barnes Relied On *Barham* and *Pacific Bell*, Which Wrongly Assumed that Private Utilities Have a Right to Socialize Losses.**

Next, Judge Barnes relies heavily on two California Court of Appeal decisions that pre-date the 2017 CPUC decision. The first, *Barham v. S. Cal. Edison Co.*, 74 Cal. App. 4th 744, 751 (1999), is cited for the proposition that a private utility company "could be liable for inverse condemnation." (F&R at 6.)  However, the *Barham* court expressly based its decision on the assumption that the defendant utility company could "spread among the benefiting community any burden disproportionately borne by a member of that community"—an assumption that was unchallenged in that case and has since been proven incorrect. 74 Cal. App. 4th at 751.  PacifiCorp does *not* have the ability to "socialize[]" and "distribute[]" inverse condemnation losses over the "taxpayers at large." *Cantu v. Pac. Gas & Elec. Co.*, 189 Cal. App. 3d 160, 165 (Cal. Ct. App. 1987).  Instead, the CPUC has exclusive jurisdiction to set rates. Cal. Pub. Util. Code § 454(a).

The second case, *Pacific Bell Telephone Co. v. Southern California Edison Co.,* 208 Cal. App. 4th 1400 (2012), has been similarly undermined by the 2017 CPUC decision. In *Pacific Bell*, the court held that a utility could be liable in inverse condemnation in part because the utility had failed to "point[] to any evidence to support its implication that the [CPUC] would not allow [the utility] to pass on damages liability[.]" *Id.* at 1407.  Yet Judge Barnes still relies on *Pacific Bell*, including the court's statement that "the happenstance of which type of utility operates in an area should [not] foreclose a property owner's right to just compensation under inverse

condemnation[.]" *Id.* at 1408.  But without the ability to socialize losses, inverse condemnation liability would unfairly shift losses to a private utility, even if the utility was not negligent or otherwise liable in tort.  Judge Barnes also contends that a *Pacific Bell* footnote "expressly reject[s]" PacifiCorp's argument because it says that a municipally owned utility would still be subject to inverse condemnation liability if it could not raise rates. (F&R at 8 n. 8.) But that analogy fails for two reasons.  *First*, a municipally owned utility is undisputedly a "public entity" and therefore subject to inverse liability under the plain language of the California Constitution.  *Second*, even if the municipal utility's rates are set by the CPUC, the municipality has the ability to socialize losses through taxation—an option that a private utility such as PacifiCorp does not have.  Put simply, the Court should disregard *Barham* and *Pacific Bell*, which conflict with inverse principles set out by the California Supreme Court, and which rely on a demonstrably false assumption.

### C. Judge Barnes Ignores the Text of the California Constitution.

Finally, Judge Barnes does not interpret the California Constitution's text or explain how it applies to a *public* entity suing a *private* entity.  As discussed in PacifiCorp's Motion (ECF 9 at 10) and Reply (ECF 12 at 4–5), the text of the California Constitution itself bars the application of inverse condemnation by a public entity against a private entity.  The Takings Clause requires just compensation when "*private* property" is taken for a "*public* use." (Cal. Const., Art. I, § 19 (emphasis added).)  Judge Barnes does not give sufficient weight to the text of the Takings Clause or explain why the California Supreme Court would interpret it in such an atextual way. *See Albano v. Shea Homes Ltd. Partnership*, 634 F.3d 524, 530 (9th Cir. 2011) ("If the state's highest court has not decided an issue, it is the responsibility of the federal courts sitting in diversity to predict how the state high court would resolve it.").  PacifiCorp is not aware of any California Supreme Court or Court of Appeal decision that allowed a public entity's inverse condemnation claim to proceed against a private utility.

## IV. COUNTY'S ALLEGATIONS DO NOT MEET THE *CITY OF OROVILLE* SUBSTANTIAL CAUSATION STANDARD.

County's inverse condemnation claim fails for the independent reason that County has not alleged "substantial causation" as defined by *City of Oroville*. A plaintiff must allege that "the injury to private property is an 'inescapable or unavoidable consequence' of the public improvement as planned and constructed." *City of Oroville v. Superior Ct.*, 7 Cal. 5th 1091, 1108 (2019); *see also Albers v. Los Angeles Cnty.*, 62 Cal. 2d 250, 258 (1965) (public entities are only liable for damages caused by the "necessary effect[s]" of a public improvement). The California Supreme Court set this high bar to "mitigate concerns that 'compensation allowed too liberally will seriously impede, if not stop, beneficial public improvements because of the greatly increased cost.'" *City of Oroville*, 7 Cal. 5th at 1103 (quoting *Bacich v. Bd. of Control of California*, 23 Cal. 2d 343, 350 (1943)).

Judge Barnes did not correctly apply the "inescapable or unavoidable" standard to County's allegations. Judge Barnes cites to a handful of allegations that PacifiCorp was aware of a fire "risk" and "knew its electrical distribution system was vulnerable to known and foreseeable weather and environmental conditions." (F&R at 9.) But County does not (and cannot) allege that any fire was an "inescapable or unavoidable consequence," or that the particular chain of events alleged in this case (i.e., a tree falling into a distribution line on September 8, 2020, causing the line to come to ground, arc, start a fire, and burn County property) was inevitable. Other jurisdictions have rejected inverse condemnation liability in similar circumstances because fire damage is inherently uncertain. *See, e.g.*, *City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 825 (Tex. App. 2014) (holding that to plead causation for inverse condemnation, the plaintiff must allege that each step of a seven-step chain of causation was "almost certain" to occur).

## V. COUNTY'S ALLEGATIONS DO NOT MEET THE *CITY OF OROVILLE* "INHERENT RISK" STANDARD.

Even if County adequately alleged substantial causation, not all damage substantially caused by government acts can support an inverse condemnation claim. County must allege that its damages arose from the "inherent dangers of the public improvement as *deliberately* designed,

1 constructed, or maintained." *City of Oroville*, 7 Cal. 5th at 1106.  In contrast, allegations that a
2 public entity "negligent[ly] operat[ed] a public improvement do not create inverse condemnation
3 liability. *Id.* at 1104 (quoting *Customer Co.*, 10 Cal. 4th at 382).

4       Judge Barnes misapplies the *Oroville* standard, quoting *Oroville* for the proposition that the
5 wildfires resulted from PacifiCorp's "policy choice to benefit from the cost savings from declining
6 to pursue a reasonable maintenance program." (F&R at 10, quoting *City of Oroville*, 7 Cal.5th at
7 1107.)  But Judge Barnes does not identify any allegations in the Complaint that PacifiCorp made a
8 policy choice to benefit from the cost savings in a deficient maintenance plan. (F&R at 10.) The
9 discussion about cost savings and PacifiCorp's maintenance plan came not from the complaint, but
10 instead materialized first in County's opposition. (Opposition (ECF 11) at 9.)  And as the Reply
11 explains, County did not plead that PacifiCorp made a policy choice to benefit from the cost
12 savings by declining to pursue a reasonable maintenance program.  (Reply (ECF 12) at 7.)  The
13 Court must consider only the allegations in County's complaint when ruling on the Motion.

14 **VI.**     **THE DAMAGE TO COUNTY'S PROPERTY IS NOT SUFFICIENTLY**
15          **CONNECTED TO A PUBLIC USE.**

16       California's Takings Clause provides that only damage "for public use" creates a
17 compensable taking. Cal. Const. Art. I, § 19.  The California Supreme Court has strictly interpreted
18 this language, holding that the "destruction or damaging of property" itself must be "sufficiently
19 connected with 'public use' as required by the Constitution" to support an inverse claim.  *Customer*
20 *Co. v. City of Sacramento*, 10 Cal. 4th 368, 382 (1995) (quoting *House v. Los Angeles Cnty. Flood*
21 *Control Dist.*, 25 Cal. 2d 384, 396 (1994) (Traynor, J., concurring)). Applied here, County must
22 allege that the damage to its property served a public use, not that PacifiCorp's electrical system
23 served a public use.

24       Judge Barnes does not discuss or distinguish *Customer Co.*, where the California Supreme
25 Court held that tear gas damage to a store and its inventory was not damage "for public use" even
26 though the police officers had deliberately fired tear gas canisters for a public purpose:
27 apprehending an escaping criminal. 10 Cal. 4th at 388.  As the California Supreme Court reasoned,
28 the destruction of the store's property did not convey a benefit for public use, even though it arose

from the underlying public benefit of capturing the criminal. *Id.* Thus, the relevant question is not whether a Court can find some public benefit somewhere in the chain of causation (e.g., the construction of an electrical system), but whether the "destruction or damaging of property" *itself* is "sufficiently connected with 'public use[.]'" *Id.* at 382 (quoting *House v. Los Angeles Cnty. Flood Control Dist.*, 25 Cal. 2d 384, 396 (1994) (Traynor, J., concurring)).  Like the tear gas damage to the store, County cannot allege that the fire damage to its property served a public use.

Judge Barnes discusses only *Miller v. City of Palo Alto*, 208 Cal. 74, 77 (Cal. 1929), where the California Supreme Court found that a city's garbage department's negligence in starting a fire did not serve a "public use," defined as a "use which concerns the whole community," even though the "collection and disposal of garbage" served "governmental functions." *Id.* at 76.  Judge Barnes distinguishes *Miller* by arguing that *Miller* involved "simple negligence," whereas *City of Oroville* allows for liability if a plaintiff's property is damaged "as a result of the defendant's design, construction, or maintenance of a public improvement then the plaintiff is entitled to compensation for the damage 'whether it was intentional or the result of negligence by the public entity.' *City of Oroville*, 7 Cal. 5th at 1106." (F&R at 10-11.)  But, crucially, the "design, construction, or maintenance" theory of inverse liability requires County to satisfy the "inherent risk" and "deliberate" requirements discussed above.  And, as described in *Customer Co.,* damage is "sufficiently connected" to a "public use" only when it "is a result of dangers *inherent in the construction of the public improvement* as distinguished from *dangers arising from the negligent operation of the improvement.*" *Customer Co.*, 10 Cal. 4th at 382 (emphasis in original). Therefore, County's allegations that PacifiCorp maintained a deficient vegetation management plain or negligently failed to de-energize do not provide for inverse condemnation liability.  The Court must follow the California Supreme Court's opinions in *City of Oroville* and *Customer Co.* and find that PacifiCorp is not subject to inverse condemnation liability.

## VII.  CONCLUSION

Judge Barnes does not correctly apply California's inverse condemnation doctrine set forth in California Supreme Court cases such as *City of Oroville*.  *First*, PacifiCorp is not a public entity and cannot socialize losses as a matter of right.  *Second*, County has not sufficiently pleaded that

wildfire damage to its property was "inescapable or unavoidable" or the result of an "inherent risk" in PacifiCorp's electrical system as *deliberately* designed, constructed or maintained. *Third*, Judge Barnes did not address California Supreme Court cases that require County to allege that the damage to its property was in service of a public use.

As such, PacifiCorp respectfully requests that the Court decline to adopt Magistrate Judge Barnes's Findings and Recommendations, and instead find that County's inverse condemnation fails as a matter of law.

Dated:  February 20, 2024                    Respectfully submitted,

HUESTON HENNIGAN LLP

By: _____
Douglas J. Dixon
Alison L. Plessman
Craig A. Fligor
Attorneys for Defendant PacifiCorp

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that: I am over the age of eighteen (18) and not a party to the within action. I am employed in the law firm of Hueston Hennigan LLP, 523 West 6th Street, Suite 400, Los Angeles, CA 90014.

On February 20, 2024, I used the Eastern District of California's Electronic Case Filing System, with the ECF registered to Craig A. Fligor to file the following document(s):

**DEFENDANT PACIFICORP'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS**

The ECF system is designed to send an e-mail message to all parties in the case, which constitutes service. The parties served by e-mail in this case are found on the Court's Electronic Mail Notice List.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 20, 2024, at Los Angeles, California.

/s/ Sonia Gaeta
SONIA GAETA