**BARON & BUDD, P.C.**
John P. Fiske (SBN 249256)
Jason Julius (SBN 249036)
Victoria Sherlin (SBN 312337)
Taylor O'Neal (SBN 336077)
11440 West Bernardo Court Suite 265,
San Diego, CA 92127
Telephone: 858-251-7424 Fax: 214-520-1181
Email: jfiske@baronbudd.com
       jjulius@baronbudd.com
       tsherlin@baronbudd.com
       toneal@baronbudd.com

**DIAB CHAMBERS LLP**
Ed Diab (SBN 262319)
Robert J. Chambers, II (SBN 244688)
10089 Willow Creek Road, Suite 200
San Diego, CA 92131
Tel: (619) 658-7010
Email: ed@dcfirm.com
       rob@dcfirm.com

*Attorneys for Plaintiff Siskiyou County*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SISKIYOU COUNTY, a political subdivision of the State of California, duly organized and existing by virtue of the laws of the State of California,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PACIFICORP, and DOES 1 through 50,<br><br>　　　　　Defendants. | Case No.: 2:22-cv-01582-DAD-DB<br><br>**PLAINTIFF SISKIYOU COUNTY'S REPLY TO DEFENDANT PACIFICORP'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS**<br><br>Judge: Hon. Dale Drozd<br>State Action Filed: August 10, 2022<br>Case Removed to Eastern District: September 8, 2022 |

# TABLE OF CONTENTS

I.     INTRODUCTION……………………………………………………………………..1

II.    LEGAL STANDARD………………………………………………………………….3

III.   ARGUMENT………………………………………………………………………..4

    A.   PacifiCorp is a Public Entity Under California Law………………………………4

    B.   Loss Spreading is Not an Element of Inverse Condemnation……………………..6

    C.   Judge Barnes Correctly Found CPUC Rate Cases Cannot Disturb Binding Legal Precedent……………………………………………………………………..9

    D.   Judge Barnes Properly Concluded that Plaintiff Alleged Substantial Causation and Inherent Risk……………………………………………………………………10

    E.   Plaintiff Adequately Alleged that PacifiCorp's Provision of Electricity was a Public Use………………………………………………………………………12

IV.  CONCLUSION……………………………………………………………………..15

ii

PLAINTIFF SISKIYOU COUNTY'S REPLY TO DEFENDANT PACIFICORP'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Aetna Life & Casualty Co. v. City of L.A.*
    (1985) 170 Cal.App.3d 865 ...................................................................................2, 12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................4

*Baker v. Burbank-Glendale-Pasadena Airport Auth.*,
    39 Cal.3d 862 (1985) ....................................................................................................7

*Barham v. Southern Cal. Edison Co.*
    (1999) 74 Cal.App.4th 744 ........................................................2, 3, 5, 6, 9, 10, 13, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................4

*Breidart v. Southern Pac. Co.*
    (1964) 61 Cal.2d 659 ..................................................................................................10

*Bunch v. Coachella Valley Water Dist.*
    (1997) 15 Cal.4th 432 ...................................................................................................2

*City of Austin v. Liberty Mut. Ins.*,
    431 S.W.3d 817 (Tex. App. 2014)..............................................................................12

*City of Oroville v. Superior Court*
    (2019) 7 Cal. 5th 1091 ...............................................................................3, 11, 12, 13

*Customer Co. v. City of Sacramento*
    (1995) 10 Cal.4th 368 ...........................................................................................12, 13

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) ........................................................................................4

*Gay Law Students Ass'n v. Pacific Tel. & Tel. Co.*
    (1979) 24 Cal. 3d 458 ...................................................................................................4

*Holtz v. Superior Court of San Francisco*
    (1970) 3 Cal.3d 296 ......................................................................................................7

*Marin Water & Power Co. v. Railroad Com. of California*
    (1916) 171 Cal. 706 ..................................................................................................8, 9

*Nat'l City Business Ass'n v. City of Nat'l City*
    (1983) 146 Cal.App.3d 1060 ........................................................................................3

iii

PLAINTIFF SISKIYOU COUNTY'S REPLY TO DEFENDANT PACIFICORP'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS

*City of Mill Valley v. Transamerica Ins. Co.*
   (1979) 98 Cal.App.3d 595 .................................................................................................3

*Pacific Gas and Electric Co. v. W. H. Hunt*
   (1957) 49 Cal.2d 565 .........................................................................................................6

*PegaStaff v. Public Utilities Comm.*
   (2015) 236 Cal.App.4th 374 ............................................................................................10

*Raven v. Deukmejian*
   (1990) 52 Cal.3d 336 .........................................................................................................9

*Slemons v. Southern Cal. Edison Co.*
   (1967) 252 Cal.App.2d 1022 .........................................................................................5, 6

*Webb v. Trader Joes Company*,
   2021 WL 2275265 (9th Cir. 2021) ....................................................................................4

**Statutes**

Cal. Pub. Util. Code § 216(a)(1) ..................................................................................................5

Cal. Pub. Util. Code § 612 ...........................................................................................................5

**Other Authorities**

*Butte Fire Cases*, No. JCCP4853......................................................................................................1

CA. Const. art. XII § 1-8.........................................................................................................1, 10

CA. Const. art. XII § 3 ..................................................................................................................1

California Constitution Article I, Section 19 ...........................................................................1, 7

Fed. R. Civ. P. 12(b)(6), 12(c) ......................................................................................................4

Fed. R. Civ. P. Rule 12(c) ...........................................................................................1, 3, 4, 14

Texas Constitution .......................................................................................................................12

PLAINTIFF SISKIYOU COUNTY'S REPLY TO DEFENDANT PACIFICORP'S OBJECTIONS TO MAGISTRATE JUDGE'S
FINDINGS AND RECOMMENDATIONS

## I. INTRODUCTION

The Hon. Magistrate Judge Deborah Barnes issued an extensive, eleven-page order recommending Defendant PacifiCorp's ("Defendant" or "PacifiCorp") Motion for Judgment on the Pleadings ("MJOP" or "Motion") (ECF #9) be denied (ECF #34). For the following reasons, Plaintiff Siskiyou County ("Plaintiff" or, "the County") respectfully requests this Court accept Judge Barnes' findings and recommendations ("Magistrate's F&R") and deny Defendant's Motion.

First, PacifiCorp is unequivocally a "public utility" subject to inverse condemnation liability under California law. The California Constitution prescribes that private corporations that are in the business of the generation and provision of power are public utilities subject to control by the Legislature. CA. Const. art. XII § 3. PacifiCorp, and particularly its peers – i.e., Pacific Gas & Electric Co., Southern California Edison, etc. – have a long, unsuccessful history of attempting to convince courts that their privately held status somehow absolves them of their status as public utilities. As Judge Barnes correctly pointed out and cited to in several cases, "under California law the proposition a privately-owned public utility such as PG&E may be held liable for inverse condemnation is now solidly established." *Butte Fire Cases*, No. JCCP4853, 2017 WL 9832289, at *6 (Sup.Ct. Sacramento County June 22, 2017).

Second, PacifiCorp misstates the law of inverse condemnation, arguing that its ability to spread losses is a necessary element. Article I, Section 19 of the California Constitution provides simply that private property may be taken or damaged for public use only when just compensation has been paid to the owner. Whether the condemnor is able socialize its losses through taxation or any other vehicle is not a consideration. As Judge Barnes noted, Defendant PacifiCorp's argument in this regard is unpersuasive, and this Court should not apply a different standard in this instance. *Magistrate's F&R* at p. 7-8.

Third, Judge Barnes correctly found that CPUC rate cases cannot disturb binding legal precedent. The CPUC does not have the power to overturn judicial decisions. As explained in detail herein, the California Constitution charges the CPUC with an entirely different scope of responsibilities, including the power to fix rates, establish rules, and otherwise regulate all public utilities subject to its jurisdiction. CA. Const. art. XII § 1-8. The jurisdiction of the CPUC is completely independent of the judiciary's interpretation of the state constitution. As Judge Barnes correctly found, PacifiCorp's argument rests on a factual speculation that cannot underlie this Court's decision on a Rule 12(c) motion. *See Magistrate's*

*F&R* at p. 7-8. Because the CPUC denied a rate increase in 2017 with respect to a different public utility, PacifiCorp requests this court to speculate that the CPUC, based on some unknown future date, would deny a request by PacifiCorp to raise rates to recoup potential future losses associated with the instant lawsuit. The 2017 CPUC decision has no impact on the viability or application of *Barham v. Southern Cal. Edison Co.* (1999) 74 Cal.App.4th 744 ("*Barham*"), or *Pacific Bell Telephone Co. v. Southern California Edison* Co., (2012) 208 Cal.App.4th 1400 ("*Pacific Bell*") to the present action, and thus, this Court should not ignore decades of binding precedent in rendering a decision on Defendant's Motion.

Fourth, the County exhaustively pled substantial causation and inherent risk. ¶ 68-69, 71-78, 91. PacifiCorp argues that Plaintiff failed to allege its property damage was substantially caused by PacifiCorp's operations and that Plaintiff failed to allege inherent risk. At the pleading stage, Plaintiff need only allege facts which, if proven, would give rise to liability. As explained herein, Plaintiff has more than satisfied that threshold.

Fifth, PacifiCorp misinterprets the public use requirement of inverse condemnation. A public utility's provision of electricity to the public is a "public use" for purposes of inverse condemnation. Defendant's assertion that the wildfire it caused must serve a public use conflicts with decades of California law. *See Barham* and *Pacific Bell*; *see also Aetna Life & Casualty Co. v. City of L.A.* (1985) 170 Cal.App.3d 865 ("*Aetna*"). The public use element focuses entirely on the fact that PacifiCorp's lines were deliberately designed and constructed for a public use and not that the damage served some public use. Here, Plaintiff alleged the design, construction, and maintenance of PacifiCorp's electrical utility caused the Slater Fire, which in turn caused Plaintiff's damages. Thus, as Judge Barnes correctly concluded, condemning property for the transmission of electrical power is a public use and inverse condemnation applies.

In sum, there is no reasonable dispute that Plaintiff's Complaint states a claim and alleges sufficient facts to state a cause of action for inverse condemnation under California law. Inverse condemnation does "not derive from statutory or common law tort doctrine[.]" *Bunch v. Coachella Valley Water Dist.* (1997) 15 Cal.4th 432, 439-40. Instead, inverse condemnation is a takings claim. The California Constitution's "just compensation clause is the 'distinct constitutional source' that underlies a public entity's responsibility to compensate owners for damage resulting from the construction of a public

improvement." *City of Oroville v. Superior Court* (2019) 7 Cal. 5th 1091 at 1103 ("*Oroville*"). The right to just compensation is a fundamental right: non-negotiable and guaranteed by the California Constitution. *Nat'l City Business Ass'n v. City of Nat'l City* (1983) 146 Cal.App.3d 1060, 1065. Because the right to just compensation is inviolable, it is "settled law that any actual physical injury to real property caused by a public entity's improvement as deliberately designed and constructed is compensable … *whether foreseeable or not."* *City of Mill Valley v. Transamerica Ins. Co.* (1979) 98 Cal.App.3d 595, 600 (italics in original). To plead inverse condemnation Plaintiff must allege: (1) a public entity; (2) substantially caused; (3) damage to Plaintiff's property; (4) for a public use. *Barham* at 751. Plaintiff's Complaint properly pleads each element of the claim, alleging: (1) PacifiCorp is a "public utility" as that term is defined by the California Constitution and State law (*See* Plaintiff's Compl. ¶¶ 16, 18, 130); (2) that the Slater Fire was the inescapable and unavoidable consequence of PacifiCorp's electrical equipment as deliberately designed, constructed and maintained (*Id.* at ¶¶ 75, 61-63, 75); (3) that Plaintiff's property was physically damaged by the Fire (*Id.* at ¶¶ 15, 55-56, 68-69, 71-75, 89-90, 106, 113, 122, 137, and 145); and (4) PacifiCorp's electrical equipment supplies electricity to the public for a public use. (*Id.* at ¶¶ 60-62, 65, 74). Thus, Plaintiff's inverse condemnation cause of action clearly establishes each element of the claim.

    Judge Barnes reviewed Defendant's Motion, and consistent with decades of California jurisprudence, correctly found that inverse condemnation applies to PacifiCorp and that Plaintiff alleged sufficient facts to state a claim for inverse condemnation. Accordingly, Siskiyou County submits this reply brief in response to Defendant PacifiCorp's Objections to Magistrate Judge Deborah Barnes' Findings and Recommendations ("Defendant's Objections to the Magistrate's F&R") (ECF #36). Plaintiff respectfully submits that Judge Barnes correctly applied California's inverse condemnation law to Defendant, and thus, this Court should adopt the Magistrate's F&R and deny Defendant's Motion.

    **II.**    <u>**LEGAL STANDARD**</u>

    Federal Rule of Civil Procedure 12(c) motions challenge the legal sufficiency of the opposing party's pleadings. In assessing a motion for judgment on the pleadings, the court may consider all documents that qualify as part of the nonmovant's pleading, including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the

pleading, and (4) matters of which the Court may take judicial notice. *See* Fed. R. Civ. P. 12(c); *Webb v. Trader Joes Company*, 2021 WL 2275265 (9th Cir. 2021). The standard for reviewing a motion for judgment on the pleadings is the same as a motion to dismiss, and the Court must accept the material facts as alleged in the complaint as true and draw reasonable inferences in favor of the non-moving party. Fed. R. Civ. P. 12(b)(6), 12(c); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

At this early stage of the litigation, a plaintiff is required to simply allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is with this broad lens that this Court must review Defendant's Motion. For the reasons set forth herein, Plaintiff Siskiyou County has more than satisfied this standard, and Defendant's Motion should be denied.

### III. ARGUMENT

#### A. PacifiCorp is a Public Entity Under California Law

PacifiCorp's core argument attempts to establish an illusory legal distinction between the concepts of "public entity" and "public utility" as those terms are used in the context of inverse condemnation law. This argument relies upon a demonstrably false premise: that a "privately owned utility" can never be a "public entity." *See Defendant's Objections to the Magistrate's F&R* at p. 5. In practice, the terms are synonyms. PacifiCorp is by law a public utility, and California law is clear that a public utility is "more akin to a governmental entity than to a purely private employer." *Gay Law Students Ass'n v. Pacific Tel. & Tel. Co.* (1979) 24 Cal. 3d 458, 469.

Defendant argues that Judge Barnes erroneously predicts that the California Supreme Court would allow an inverse condemnation claim to proceed against PacifiCorp. However, PacifiCorp is a public utility operating under the terms of a franchise from the State. The California Constitution provides, in relevant part, that:

///

///

///

> **Private corporations** and persons that own, operate, control, or manage a line, plant or system for the … production, generation, [or] transmission … of power … **are public utilities** subject to control by the Legislature. **The Legislature may prescribe that additional classes of private corporations or other persons are public utilities.**
> CA. Const. art. XII § 3 (emphasis added).

The Legislature further clarified that a "[p]ublic utility' includes every … electrical corporation … where the service is performed for, or the commodity is delivered to, the public or any portion thereof." Cal. Pub. Util. Code § 216(a)(1). PacifiCorp is indisputably in the business of providing electrical power to the public. As a result, PacifiCorp is, by definition in the State of California, a "public utility."

In California, public utilities operate according to the terms of their franchise agreements with the government. The "term 'franchise ordinarily refers to those services and functions that the government itself is obligated to furnish to its citizens, and usually concerns matters of *vital* public interest such as …electricity[.]" *Pacific Bell* at 1407 (emphasis in original). In *Pacific Bell*, the Court explained, that in lieu of providing electrical services itself, "the government has chosen to grant a franchise and delegate the furnishing of electricity to Edison." *Id*. As a component of its franchise, PacifiCorp has the power to "condemn any property" as part of the operation of their electrical transmission facilities. Cal. Pub. Util. Code § 612; *see also Slemons v. Southern Cal. Edison Co.* (1967) 252 Cal.App.2d 1022, 1026. That unquestioned power to take private property for a public use is the reason that privately owned public utilities "may be liable in inverse condemnation as a public entity." *Barham* at 753. PacifiCorp's MJOP and Opposition to the Magistrate's F&R ultimately rely upon a distinction without a difference - PacifiCorp's status as a "public utility" renders it a "public entity" under the law. There is no hidden category of public utility, but not a public entity; they are one and the same for purposes of inverse condemnation law. Investor-owned utilities have attempted to argue this for at least two decades – only for California courts to universally repudiate that effort. *Id.; see also Plaintiff's RJN ISO Opposition to Defendant's MJOP* (ECF 11)*; see also Plaintiff's Notice of Supplemental Authority* (ECF 33).

The fundamental right to just compensation protects California citizens from bearing a disproportionate share of the costs of public infrastructure. Private corporations like PacifiCorp, operating as public entities, exercise the State's power in their ordinary course of business. California citizens' fundamental rights are not altered simply because the State delegated its power to a private entity. "Such

a delegation does not remove the policy justifications underlying inverse condemnation liability[.]" *Pacific Bell* at 1407. PacifiCorp's private ownership structure is irrelevant. The salient issue that renders PacifiCorp a public entity is the character of the governmental power it wields – condemnation.

PacifiCorp and other electrical utilities routinely exercise their delegated power of eminent domain to "take" or obtain property rights for power lines. See, e.g., *Pacific Gas and Electric Co. v. W. H. Hunt* (1957) 49 Cal.2d 565. As a result, PacifiCorp's provision of electrical power to the general public is categorically defined as "for public use." *Slemons v. Southern Cal. Edison,* 252 Cal.App.2d 1022, 1026 (1967). The power to take property "for a public use," which PacifiCorp liberally employs is, and always has been, the common factor giving rise to inverse condemnation liability – not the corporate structure of the entity which appropriates the property. *Barham* at 753. As a result, property owners who suffer damage because of the failure of electrical insfrastructure designed, owned, operated, and/or maintained for public use may recover against a privately-owned electrical utility in inverse condemnation. *Id.*

Application of inverse condemnation to private companies is not new, novel, or unfair. It is quite the opposite and well-settled law.  It is the very reason California's Constitution is written in its current form. No corporate structure can change PacifiCorp's fundamental character: PacifiCorp is a public entity exercising delegated State power. No "significant differences exist regarding the operation of publicly versus privately owned electrical utilities" and "there is no rational basis upon which to found such a distinction."  *Barham* at 753. Accordingly, Judge Barnes correctly found that inverse condemnation applies to Defendant PacifiCorp, and thus, the Court should adopt the Magistrate's F&R and deny PacifiCorp's MJOP.

**B.  Loss Spreading is Not an Element of Inverse Condemnation**

PacifiCorp argues that a fundamental underpinning of inverse condemnation is the ability to distribute losses. That is not the standard. As set forth in the Magistrate's F&R, PacifiCorp incorrectly attempts to rely on a 2017 CPUC decision to suggest that loss spreading is a dispositive element of inverse condemnation. That the CPUC denied a *different utility*'s request to increase rates one time does not alter the nature of PacifiCorp's bargain with the State. PacifiCorp still utilizes its governmental authority to condemn property, design, construct, and maintain infrastructure for a public use, and does so via its state-sanctioned monopoly.

PacifiCorp's Motion and its Objections to the Magistrate's F&R both fail to mention the privileges and powers it enjoys, and instead argues that it is entitled to more. PacifiCorp argues that it should be allowed to impose *guaranteed* rate increases on its ratepayers even when it behaves unjustly and unreasonably. In essence, PacifiCorp seeks to have it all: (1) a state sanctioned monopoly on the delivery of electrical power; (2) a guarantee that it can raise its rates to cover the costs of wildfire damages; (3) a corresponding exemption from the CPUC's prudent manager standard; and (4) a judicially created exemption from the State Constitution's just compensation guarantee at the expense of California citizens' fundamental rights. If PacifiCorp's position were accepted, it would have powers greater than the government itself – the right to take property for public use without a parallel obligation to reimburse the public it serves.

The ability to automatically socialize losses is plainly not an element of inverse condemnation. PacifiCorp's arguments to the contrary improperly and inaccurately elevate a single policy justification for inverse condemnation into a mandatory element of a properly pled claim. In doing so, PacifiCorp fundamentally misunderstands and misstates the nature of inverse condemnation's loss spreading rationale. California's guarantee of just compensation protects the party who suffers damage to their property; not the party who inflicts that damage. "The decisive consideration is whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking." *Holtz v. Superior Court of San Francisco* (1970) 3 Cal.3d 296, 303. The loss spreading rational for inverse condemnation serves to "afford relief to the landowner in cases in which it is unfair to ask him to bear a burden that should be assumed by society." *Id.* PacifiCorp states that relationship *precisely* backwards arguing that it, as the party who damaged the land, is entitled to spread the costs of its legal liabilities. That is incorrect. A harmed property owner has a fundamental right to just compensation. The utility that damages its land does not have a parallel right to avoid paying that just compensation.

Furthermore, Article I, Section 19 of the California Constitution provides, unequivocally, that "[p]rivate property may be taken or damaged for a public use … only when just compensation … has first been paid to, or into court for, the owner." *See also Baker v. Burbank-Glendale-Pasadena Airport Auth.*, 39 Cal.3d 862, 866 (1985). The key component of an inverse condemnation claim is thus not any

implied taxation authority, but that private property was damaged "for a public use." *Id.* Nothing in the California Constitution limits the right of recovery to scenarios in which the defendant can socialize or "distribute" its loss, and no California court has held that a Defendant's plenary authority to spread costs is a necessary element of an inverse condemnation claim. To the contrary, the court in *Pacific Bell* specifically contemplated that the Legislature could permit the CPUC to regulate municipally owned entities and thereby exercise discretion to set their rates. *Pacific Bell* at 1407 n.6. That would, in effect, deny the municipalities the right to recover wildfire costs through taxation. Under those circumstances, the court noted that it did "not believe such regulation would immunize municipal utilities from inverse condemnation under the theory that they were no longer able to spread the cost of public improvements. *Id.* Thus, an inability to spread losses is irrelevant to PacifiCorp's inverse condemnation liability.

California courts have also rejected the argument that loss-spreading is the exclusive policy justification for inverse condemnation in other contexts. In *Marin Mun. Water Dist. v. City of Mill Valley* a county water district sought recovery in inverse condemnation against a city – a smaller political subdivision. (1988) 202 Cal. App. 3d 1161. Like PacifiCorp in this case, the city argued that the claim "[ran] counter to the purpose of inverse condemnation" of "socializ[ing] the burden of loss," and would cause "the loss distribution [to] decrease—from countywide to citywide—rather than increase." *Id*. at 1165. The Court of Appeals rejected this argument, concluding that it "would make the availability of an inverse condemnation" claim "dependent on the relative sizes of the parties—that is, a smaller entity could bring such an action against a larger one, but not vice versa." *Id*. at 1165-66. The court concluded that such an approach would be arbitrary.

Finally, that Plaintiff Siskiyou County, is a public entity also subject to inverse condemnation has no bearing on the instant Motion. As the Court expressly stated in *Marin*, "[w]e see no reason why these principles should not apply to compensate for damage to property owned by another public entity." *Id*. at 1165 (internal citations omitted). The California Supreme Court and Courts of Appeal allow privately owned electric utilities to be held liable for inverse condemnation claims and they allow public entities, like Plaintiff in this action, to bring inverse condemnation claims.

/ / /

/ / /

Irrespective of loss spreading, inverse condemnation exists to allocate losses onto the party best able to prevent them. Accordingly, Judge Barnes correctly applied inverse condemnation to PacifiCorp, and this Court should adopt the Magistrate's F&R.

### C. **Judge Barnes Correctly Found CPUC Rate Cases Cannot Disturb Binding Legal Precedent**

PacifiCorp's MJOP and Objections to the Magistrate's F&R acknowledge that *Barham* and *Pacific Bell* hold that private utilities may be held liable for inverse condemnation. PacifiCorp does not dispute the existence of that controlling case law. Instead, PacifiCorp argues that a later CPUC rate case renders these cases inapplicable. *See MJOP* at p.15; *see also Defendant's Objections to the Magistrate's F&R* at p. 7-8.

As Judge Barnes correctly concluded, PacifiCorp's position radically overstates the relevance of CPUC proceedings to the Appellate Courts' reasoning. PacifiCorp asserts that the ability to spread costs through rate-setting proceedings was a critical assumption of the prior Court of Appeal decisions in *Barham* and *Pacific Bell*. *See Defendant's Objections to the Magistrate's F&R* at p. 8. This is simply not true. The *Barham* court did not discuss the existence of the CPUC at all, much less rely on assumptions about the CPUC's rate case procedures to hold that "SCE may be liable in inverse condemnation as a public entity." *Pacific Bell* at 753.  Similarly, the *Pacific Bell* court only mentioned CPUC rate-setting procedures in passing; confining its entire discussion of the issue to two sentences - and then only to note it was not ripe for adjudication. *Id.* at 1407. The *Pacific Bell* court did not "assume" in any way that all of SCE's inverse condemnation costs would be approved by the CPUC, or similarly condition its conclusions on SCE's ability to automatically pass wildfire damages on to consumers.

Furthermore, the CPUC does not have the power to overturn judicial decisions. *Barham* and *Pacific Bell* are decisions that interpret and apply the just compensation clause of the California State Constitution – a power that is exclusively reserved for the courts. "The judiciary, from the very nature of its powers and means given it by the Constituion, must possess the right to construe the Constitution." *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 354. "Interpreting and applying the Constitution is the very essence of judicial power." *Marin Water & Power Co. v. Railroad Com. of California* (1916) 171 Cal. 706, 711-12. "The power to determine whether the plaintiffs have suffered a compensable invasion of

their rights resides with the courts." *Breidart v. Southern Pac. Co.* (1964) 61 Cal.2d 659, 662.

California's Constitution charges the CPUC with an entirely different scope of responsibilities, including the power to fix rates, establish rules, and otherwise regulate all public utilities subject to its jurisdiction. CA. Const. art. XII § 1-8. The Constitution also provides that, in carrying out these duties, "[s]ubject to statute and due process, the [CPUC] may establish its own procedures." *PegaStaff v. Public Utilities Comm.* (2015) 236 Cal.App.4th 374, 380. The CPUC has discretion to establish its own rate-setting standards and guidelines for public utilities. *Uber Technologies Pricing Cases* (2020) 46 Cal.App.5th 963, 966. That process is completely independent of the judiciary's interpretation of the state constitution. Consequently, the CPUC's decision to exclude inverse condemnation principles from its rate-setting standards is both appropriate and has no impact on the viability of *Barham* and *Pacific Bell.* If PacifiCorp believes the CPUC's rate setting process is inconsistent with the reasoning of *Pacific Bell,* then the appropriate remedy is to lobby the CPUC - not to insist that this Court ignore decades of precedent to accommodate CPUC rate-setting guidelines.

Based on the foregoing, the 2017 CPUC Decision should not be afforded the import PacifiCorp ascribes to it, nor does it support PacifiCorp's argument that inverse condemnation does not apply to investor-owned public utilities. Accordingly, *Barham* and *Pacific Bell* soundly remain as binding law, and the CPUC decision arising out of a different utility company's conduct, in a different wildfire, where inverse condemnation was expressly not a consideration, and a different standard of review was utilized, is not persuasive. Binding California state law is clear on this issue and settled by trial and appellate courts deciding this issue after investor-owned utilities' numerous, unsuccessful attempts to change the law in their favor. Accordingly, this Court should adopt Judge Barnes' conclusions regarding the relevance of the 2017 CPUC decision and its applicability to Court's analysis here and deny Defendant's MJOP on that basis.

### D. Judge Barnes Properly Concluded that Plaintiff Alleged Substantial Causation and Inherent Risk

#### 1. Substantial Causation

The County alleged that its property was damaged as a result of defendant's deliberate design, construction, and maintenance of Defendant's public improvement, and that the injury to its property was

the inescapable and unavoidable consequence of PacifiCorp's design, construction, and maintenance of its electrical equipment. Plaintiff further alleged that the damage was the necessary and probable result of Defendant's public improvement of supplying electricity as required under *Oroville*. *See Plaintiff's Compl.* at ¶ 68-69, 71-78.

Judge Barnes correctly concluded that Plaintiff adequately alleged that PacifiCorp's electrical infrastructure created risks that "materialized in an arcing event that caused the Slater Fire, which damaged Plaintiff's property. *See Plaintiff's Compl.* at ¶68, *see also* ¶69-78. Plaintiff further pled that PacifiCorp utilized unsafe practices in furtherance of a decision to prioritize profits over safety. *See Plaintiff's Compl. at ¶91.* Together, those allegations identified: (1) PacifiCorp's specific design choices, including those associated with system protection devices, choice of materials, and flawed maintenance planning; (2) the increased risk of electrical arcing events resulting from those design choices; and (3) that those risks directly caused Plaintiff's damages by igniting the fire. That is substantial causation. Defendant's assertions to the contrary are incompatible with California law. Accordingly, Judge Barnes correctly concluded that Plaintiff's complaint alleges sufficient facts to establish substantial causation.

Moreover, PacifiCorp's reliance on the holding of *Oroville* to support its argument regarding substantial causation is misplaced because *Oroville* dealt with a particular fact pattern that is not present here. The "substantial causation" analysis was critical in *Oroville* because the damage resulting from the sewage backup was caused, not just by the defendant city's sewer system, but also by the plaintiff's own failure to install a backwater valve as required by law. *Id*. at p. 1110.  In applying substantial causation to deny liability in *Oroville*, the Court noted: "[t]he substantial causation element of the analysis ensures liability is imposed only in instances where there is a sufficiently meaningful causal relationship between the damage to the private property and the inherent risks posed by the public improvement as designed, constructed or maintained." *Id*. at p. 1108. *Oroville's* application to the factual pleading of this case is therefore limited. Plaintiff adequately pled substantial causation. Nothing more is required at the pleading stage.

**2. Inherent Risk**

The Court in *Oroville* articulated that "useful public improvements must eventually be maintained and not merely designed and built.  So, the inherent risk aspect of the inverse condemnation inquiry is

not limited to deliberate design or construct of public improvement. It also encompasses risks from maintenance or continued upkeep of the public work." *Oroville* at 1106. Defendant has a responsibility to maintain and continuously upkeep its electrical infrastructure to ensure safe delivery of electricity to the public. Plaintiff adequately alleged the inherent risk and danger associated with Defendant's deliberate design, construction, and maintenance of its electrical systems and that the inherent danger in Defendant's failure to maintain, repair and/or replace the structural integrity of its electrical infrastructure caused the Slater Fire. *See Plaintiff's Compl. at* ¶ 26, 34, 51, 67-75, 82. Further, Plaintiff alleged that the Slater Fire was a result of Defendant's deliberate prioritization of profits over safety by failing to maintain or upkeep its public improvement and surrounding vegetation. *See Plaintiff's Compl*. at ¶ 48-54, 91.

Finally, Defendant's reliance on Texas causation precedent as a "sister jurisdiction" is misplaced. Texas and California have very different Constitutions and wildly differing condemnation jurisprudence. Texas courts require that inverse condemnation claimants plead, as an element of the claim, that the Defendant "engaged in the act intentionally" and that the Defendant "intended the resulting damage[.]" *City of Austin v. Liberty Mut. Ins.,* 431 S.W.3d 817, 824-25 (Tex. App. 2014). In the absence of such specific intent, the public entity "retains its immunity from [inverse condemnation] claims" under the Texas Constitution. *Id.* at 827. By contrast, California courts have repeatedly held the "California Constitution's eminent domain clause makes no exception for fire damage[.]" *Aetna* at 873. *City of Austin* is based on an entirely inapplicable set of legal premises and should not be considered.

### E. Plaintiff Adequately Alleged that PacifiCorp's Provision of Electricity was a Public Use

PacifiCorp incorrectly asserts that the damage to Plaintiff's property must be for a public use. *See Defendant's Opposition to the Magistrate's F&R* at *p. 10.* This is a misstatement of law. There is no "intent" element of inverse condemnation. As Defendant correctly points out, "[t]he destruction or damaging of property is sufficiently connected with 'public use' as required by the Constitution, if the injury is a result of dangers inherent in the construction of the public improvement[.]" *Customer Co. v. City of Sacramento* (1995) 10 Cal.4th 368, 381-82 ("*Customer Co.*"); *see also Opposition to F&R* at p. 11. Inverse condemnation liability flows from the resultant consequences of decisions made prior to the Slater Fire; not from any allegation that the fire itself was intended for the public benefit.

///

PacifiCorp primarily relies upon *Customer Co.* for a tortured proposition of what "public use" means in the inverse condemnation context. *Barham* easily distinguished *Customer Co.,* holding that *Customer Co.* was not an inverse condemnation case, but rather, a police powers case that constituted an exercise of its police powers which required no compensation under the just compensation clause. *Barham*, at 754-755. "A clear distinction has been recognized between inverse condemnation which arises out of damage to property caused by the construction or maintenance of public works and that which arises out of an exercise of police powers." *Id.* Despite this, PacifiCorp incorrectly cites to *Customer Co.* as the standard of what public use means in an inverse condemnation context. As set forth above, the "public use" component is satisfied if the infrastructure at issue (i.e., the power poles, powerlines, electrical infrastructure etc.) were deliberately designed and constructed for the benefit of the public. *Id.* The operative inquiry is merely whether there was "actual physical injury to real property proximately caused by a public improvement as deliberately designed and constructed." *Id.* The inquiry does not concern itself with an analysis of who or what did the damage and whether the damage was "accidental." *See Barham* at 748 (plaintiff's home was damaged after the utility's power line broke in high Santa Ana winds, resulting in a fire); and *Pacific Bell* at 1403 (plaintiff sued utility after a large bird came into contact with an energized power line and several telephone cables were subsequently damaged).

Accordingly, a public utility's provision of electricity to the public is a "public use" for purposes of inverse condemnation. Defendant's assertion that Plaintiff's inverse condemnation claim fails because the wildfire that damaged Plaintiff's property served no public use conflicts with the rulings in *Barham*, *Pacific Bell*, and *Aetna*. It also conflicts with the reasoning in *Oroville* where the "public use" was the city's sewage system; and the plaintiff claimed that its private property damage was "caused by the sewer system's failure to function as intended." *Oroville* at 1097-1098. "Raw, untreated sewage from the City's sewer main backed up into a private sewer lateral in December 2009, invading sinks, toilets, drains of a local office building." *Id*. at 1098. There, the design and operation of the sewage system led to a sewage backup, which in turn, caused property damage. Similarly, here, PacifiCorp's operations caused the Slater Fire, which in turn caused Plaintiff's damages. The public use inquiry turns entirely on the fact that PacifiCorp's lines were deliberately designed and constructed for a public use. Here, the County

specifically alleged that PacifiCorp deliberately designed, constructed, and maintained its electrical systems to distribute electricity to the public for a public use. *Plaintiff's Compl.* at ¶¶ 18, 60-62, 65, 74. Thus, Plaintiff's property was 'taken or damaged' for a public use." *See Barham* at 754. Plaintiff need not further plead that PacifiCorp specifically intended to start the Slater Fire while operating its electrical lines.

The California Court of Appeal concluded in *Pacific Bell*, that although Southern California Edison was a privately-owned utility, its function as a provider of electricity is a "public use" that subjects it to inverse condemnation:

> "An inverse condemnation action is an eminent domain action initiated by one whose property was taken for public use, as opposed to by the condemning public agency. As such, the principles of eminent domain law apply to inverse condemnation proceedings. Public Utilities Code §612 provides, "An electrical corporation may condemn any property necessary for the construction and maintenance of its electric plant." "Electric plant" includes electrical transmission facilities such as those at issue in this case. (Pub. Util. Code §217). 'Electrical corporation' includes every corporation or person owning, controlling, operating, or managing any electric plant for compensation within this state, except where electricity is generated on or distributed by the producer through private property solely for its own use or the use of its tenants and not for sale or transmission to others.' (Pub. Util. Code §218, subd. (a)). **Therefore, generally, condemning private property for the transmission of electrical power is a public use and inverse condemnation will apply**."

*Id.* at 752 (citations omitted, emphasis added).

Here, Plaintiff sufficiently pled that PacifiCorp's equipment as deliberately designed, constructed and maintained, caused the Slater Fire and that the electrical facilities were constructed for the benefit of the public. (Complaint ¶¶ 4, 5, 7-10, 18, 60-62, 65, 74). To survive a Rule 12(c) motion, the pleaded facts must be accepted as true and viewed in the light most favorable to the non-moving party, therefore, PacifiCorp's motion should be denied.

/ / /

/ / /

/ / /

## IV. CONCLUSION

Magistrate Judge Deborah Barnes correctly applied inverse condemnation to Defendant PacifiCorp, and therefore, this Court should adopt the Magistrate's F&R and deny PacifiCorp's MJOP. Instead of challenging the sufficiency of Plaintiff's allegations, PacifiCorp's MJOP and its Objections to the Magistrate's F&R, adds new elements and requirements that are plainly unsupported by California law. Plaintiff adequately alleged facts to support its cause of action for inverse condemnation. Nothing more is required at this stage. Accordingly, this court should follow in the footsteps of every similarly situated state court to date and adopt the Magistrate's F&R to deny PacifiCorp's Motion, or in the alternative, allow Plaintiff leave to amend to cure any deficiencies in the pleading stage.

Dated: March 5, 2024                    Respectfully submitted,

By: s/Victoria Sherlin
**BARON & BUDD, P.C.**
John P. Fiske
Victoria Sherlin

**DIAB CHAMBERS LLP**
Ed Diab
Robert J. Chambers, II
*Attorneys for Plaintiff Siskiyou County*